FILED
CLERK, U.S. DISTRICT COURT

7/28/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>WENHENG ZHAO,<br>　aka "Thomas Zhao,"<br><br>　　　　Defendant. | CR 2:23-cr-00372-RGK<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 201(b)(2)(C): Receiving a Bribe by a Public Official; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c): Forfeiture Allegations] |

　　The Grand Jury charges:

　　　　　　　　　　INTRODUCTORY ALLEGATIONS

　　At times relevant to this Indictment:

　　1.　　The United States Navy was a branch of the United States Department of Defense whose mission was to protect Americans at sea by, among other things, recruiting, training, equipping, organizing, and delivering combat-ready Naval forces to maintain security through sustained forward presence.

　　2.　　Defendant WENHENG ZHAO was a public official who swore an oath to faithfully discharge his duties as a Petty Officer in the United States Navy.

3. Conspirator A, whose identity is known to the Grand Jury, was an intelligence officer working on behalf of the People's Republic of China ("PRC").

4. ZHAO was not authorized to disclose sensitive U.S. military information to Conspirator A. Nevertheless, ZHAO entered into a corrupt scheme whereby he collected and transmitted to Conspirator A sensitive U.S. military information in exchange for money provided by Conspirator A.

5. The Navy Expeditionary Combat Command ("NECC") was responsible for organizing, manning, training, equipping, and sustaining the Navy Expeditionary Combat Force ("NECF") to execute combat, combat support, and combat service support missions across the full spectrum of naval, joint, and combined operations, which enable access from the sea and freedom of action through the sea-to-shore and inland operating environments.

6. The NECF possessed specialized skills that enabled maritime operations. The NECF accomplished this by maintaining open and secure logistics routes at sea and ashore, repairing critical infrastructure such as airfields and ports, and providing expeditionary base infrastructure in support of expeditionary medical facilities and other command and control nodes.

7. The United States Naval Construction Battalions form the United States Naval Construction Force ("NCF") and fall within the NECF organization. The NCF provides a wide range of support to operating forces, including construction of roads, bridges, bunkers, airfields and logistics bases; responsive support disaster recovery operations; civic action projects to improve relations with other

nations; and anti-terrorism and force protection for personnel and construction projects.

8. Naval Construction Group 1 ("NCG-1") prepared Pacific Fleet NCF units to implement construction in support of Combatant Commanders and warfighter requirements. NCG-1 was located onboard Naval Base Ventura County ("NBVC") in Port Hueneme, California, within the Central District of California.

9. Naval Mobile Construction Battalion 3 ("NMCB-3") was part of NCG-1 and was based in Ventura County in Port Hueneme, California, within the Central District of California. NMCB-3 provided engineering and construction support to naval and joint forces around the world.

10. NBVC was a United States naval installation located in Ventura County, within the Central District of California. NBVC was administered and secured by the Department of Defense and had operating facilities at Point Mugu, Port Hueneme, and San Nicolas Island, all located within the Central District of California. NBVC was strategically located near the Point Mugu Sea Range, which was the largest instrumented sea range in the world. The sea range supported both developmental and operational test and evaluation of missiles, free-fall weapons, and electronic warfare systems.

11. Naval Auxiliary Landing Field San Clemente Island ("San Clemente Island") was a United States naval installation in Los Angeles County, within the Central District of California. San Clemente Island was administered and secured by the Department of Defense. San Clemente Island was the U.S. Navy's only remaining live

fire range and supported the research and development of many of the Navy's weapons systems.

    12.   Defendant WENHENG ZHAO was enlisted in the United States Navy as a Petty Officer Second Class, and served as a Construction Electrician in NMCB-3, NCG-1. As a Petty Officer in the U.S. Navy, ZHAO was responsible for, among other things, installing, repairing, and servicing electrical equipment on U.S. military installations. As part of his official duties, among other responsibilities, defendant ZHAO was: (1) required to protect controlled unclassified information ("CUI")[1] and information related to the United States Navy's operational security ("OPSEC"); (2) not allowed to disseminate to unauthorized individuals CUI and information related to the United States Navy's OPSEC; and (3) required to report suspicious incidents, including attempts by non-Navy personnel to elicit sensitive operational information.

    13.   Defendant ZHAO maintained a U.S. security clearance and was eligible to access material up to and including the SECRET level.

    14.   These Introductory Allegations are incorporated into each count of this Indictment.

---

[1] CUI is a distinct category of information that, while not classified, is subject to safeguarding procedures and dissemination controls. Executive Order 13556 "establishes an open and uniform program for managing information that requires safeguarding or dissemination controls" for CUI. All U.S. Government agencies are required to develop and implement protective measures, conduct regular training, and establish sanctions and reporting requirements for the misuse or disclosure of CUI. 32 CFR § 2002. The Department of Defense ("DoD") implemented Executive Order 13556 via DoD Instruction 5200.48, which mandates the requirements for marking, handling, and disseminating CUI; implements reporting and training requirements for DoD components; and addresses the misuse of CUI.

4

COUNT ONE

[18 U.S.C. § 371]

15. The Introductory Allegations of this Indictment are re-alleged and fully incorporated here by reference.

OBJECT OF THE CONSPIRACY

16. Beginning in about August 2021 and continuing to at least May 2023, in Ventura and Los Angeles Counties, within the Central District of California, and elsewhere, defendant ZHAO conspired with Conspirator A, and others known and unknown to the Grand Jury, to engage in a corrupt scheme whereby defendant ZHAO collected and transmitted to Conspirator A sensitive U.S. military information, including documents marked CUI, information concerning U.S. Navy OPSEC, and photographs and videos of restricted areas on NBVC, and San Clemente Island, in exchange for money provided by Conspirator A, in violation of Title 18, United States Code, Section 201(b)(2)(C).

MANNER AND MEANS OF THE CONSPIRACY

17. The object of the conspiracy was carried out as follows:

   a. Defendant ZHAO and Conspirator A used multiple internet-based encrypted methods to communicate.

   b. Conspirator A instructed defendant ZHAO to collect and transmit to Conspirator A sensitive, non-public information related to the activities of the United States Navy, including sensitive operational information.

   c. Conspirator A instructed defendant ZHAO not to discuss their relationship and to destroy evidence regarding defendant ZHAO's communications with Conspirator A and defendant ZHAO's collection and

transmission to Conspirator A of sensitive non-public information related to the activities of the United States Navy.

d. Conspirator A offered and provided to defendant ZHAO, and defendant ZHAO accepted and received from Conspirator A, money, in return for violating his official duties as a Petty Officer in the United States Navy by collecting, photographing, recording, and transmitting to Conspirator A sensitive, non-public information related to the activities of the United States Navy.

e. In return for money and other items of value, defendant ZHAO: (1) surreptitiously gathered CUI and other sensitive material related to the United States Navy's OPSEC, including training and critical infrastructure information; (2) transmitted and attempted to transmit to Conspirator A OPSEC information and CUI documents in violation of his duties as a Petty Officer; and (3) entered restricted military and naval installations and took photographs and videos of United States Navy non-public and sensitive information and activities.

f. By means of the above-described conduct and in exchange for the above-described acts and omissions in violation of his official duties, defendant ZHAO received payments from Conspirator A totaling at least approximately $14,866.76 USD from approximately November 1, 2021 through approximately March 28, 2023.

OVERT ACTS

18. On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant ZHAO and Conspirator A committed, and caused others to commit, the following

overt acts, among others, within the Central District of California, and elsewhere:

<u>Overt Act No. 1</u>: On or about August 12, 2021, Conspirator A instructed defendant ZHAO to gather information about a "large scale" military exercise in the Indo-Pacific region. Specifically, Conspirator A asked for the "specific plan" and details regarding the locations and timing of U.S. Naval force movements, and information about various military topics such as, among others, amphibious landing, distributed maritime operations, and logistics support.

<u>Overt Act No. 2</u>: On or about August 13, 2021, on San Clemente Island, defendant ZHAO took a photograph of a "Large Scale Exercise 2021 Pacific NCF CONOPS" diagram that was marked "CUI."

<u>Overt Act No. 3</u>: On or about August 14, 2021, Conspirator A instructed defendant ZHAO on how to surreptitiously send the requested materials to Conspirator A.

<u>Overt Act No. 4</u>: On or about August 14, 2021, defendant ZHAO sent the photograph of a "Large Scale Exercise 2021 Pacific NCF CONOPS" diagram to Conspirator A and stated "transmission completed . . . large scale exercises 2021 on our side."

<u>Overt Act No. 5</u>: On or about August 14, 2021, in response to defendant ZHAO's question of why Conspirator A needed this information for maritime economic research, Conspirator A instructed defendant ZHAO to provide the requested information so that Conspirator A could use it to inform investment decisions.

<u>Overt Act No. 6</u>: On or about August 16, 2021, on San Clemente Island, defendant ZHAO took 12 photographs of computer screens that displayed operational orders of military training exercises.

<u>Overt Act No. 7</u>:   On or about November 1, 2021, defendant ZHAO received and accepted a ¥7,406.80 in Chinese Yuan Currency ("CNY") (approximately $1,157.76 U.S. Dollars "USD") payment from Conspirator A.

<u>Overt Act No. 8</u>:   On or about November 6, 2021, defendant ZHAO received and accepted ¥5,000.00 in CNY (approximately $781.56 USD) payment from Conspirator A.

<u>Overt Act No. 9</u>:   On or about November 17, 2021, on Port Hueneme, defendant ZHAO took five photographs of diagrams and blueprints outlining the electrical system in the "GATOR Storage" that housed the Ground/Air Task Oriented Radar systems located at a U.S. military base in Okinawa, Japan.  Each document was marked "UNCLASSIFIED//FOUO," indicating that it was For Official Use Only.

<u>Overt Act No. 10</u>:   On or about January 14, 2022, defendant ZHAO received and accepted a ¥24,685 CNY (approximately $3,885.69 USD) payment from Conspirator A.

<u>Overt Act No. 11</u>:   On or about June 28, 2022, defendant ZHAO received and accepted a ¥3,500 CNY (approximately $522.01 USD) payment from Conspirator A.

<u>Overt Act No. 12</u>:   On or about August 29, 2022, defendant ZHAO received and accepted a ¥3,500 CNY (approximately $506.03 USD) payment from Conspirator A.

<u>Overt Act No. 13</u>:   On or about September 1, 2022, Conspirator A directed defendant ZHAO to send Conspirator A "CUI or higher" information so that Conspirator A could send a "one-shot fee" and add a "year-end bonus" to defendant ZHAO.

<u>Overt Act No. 14</u>:  On or about September 7, 2022, defendant ZHAO received and accepted a ¥14,000 CNY (approximately $2,011.81 USD) payment from Conspirator A.

<u>Overt Act No. 15</u>:  On or about September 29, 2022, defendant ZHAO received and accepted a ¥3,500 CNY (approximately $493.37 USD) payment from Conspirator A.

<u>Overt Act No. 16</u>:  On or about October 17, 2022, defendant ZHAO sent 16 files to Conspirator A using the secure method Conspirator A had previously instructed defendant ZHAO to use.  The 16 files consisted of PowerPoint, Word, and PDF files that contained United States Navy sensitive, CUI marked, and/or OPSEC information.

<u>Overt Act No. 17</u>:  On or about October 27, 2022, defendant ZHAO received and accepted a ¥4,000 CNY (approximately $551.72 USD) payment from Conspirator A.

<u>Overt Act No. 18</u>:  On or about November 25, 2022, defendant ZHAO received and accepted a ¥10,000 CNY (approximately $1,393.65 USD) payment from Conspirator A.

<u>Overt Act No. 19</u>:  On or about November 26, 2022, defendant ZHAO received and accepted a ¥4,500 CNY (approximately $627.23 USD) payment from Conspirator A.

<u>Overt Act No. 20</u>:  On or about January 10, 2023, defendant ZHAO received and accepted a ¥4,500 CNY (approximately $663.08 USD) payment from Conspirator A.

<u>Overt Act No. 21</u>:  On or about February 2, 2023, defendant ZHAO received and accepted a ¥8,500 CNY (approximately $1,261.33 USD) payment from Conspirator A.

Overt Act No. 22:   On or about February 27, 2023, defendant ZHAO received and accepted a ¥3,500 CNY (approximately $502.84 USD) payment from Conspirator A.

Overt Act No. 23:   On or about March 28, 2023, defendant ZHAO received and accepted a ¥3,500 CNY (approximately $508.66 USD) payment from Conspirator A.

COUNT TWO

[18 U.S.C. § 201(b)(2)(C)]

19. The Introductory Allegations of this Indictment are re-alleged and fully incorporated here by reference.

20. From on or about November 1, 2021 to on or about March 28, 2023, in Ventura and Los Angeles Counties, within the Central District of California, and elsewhere, defendant ZHAO, a public official, namely, a Petty Officer of the United States Navy responsible for, among other duties, protecting United States Navy sensitive, CUI marked, and OPSEC information, directly and indirectly, corruptly received, accepted, and agreed to receive and accept something of value, namely, Chinese Yuan Currency, in return for being induced to do an act and omit doing an act in violation of his official duties. Specifically, defendant ZHAO corruptly received and accepted payments totaling approximately $14,866.76 USD from Conspirator A, an intelligence officer working on behalf of the PRC, in exchange for gathering documents, photographs, videos, and information containing sensitive, CUI marked, and United States Navy OPSEC details and providing them to Conspirator A. Such conduct violated defendant ZHAO's duties and responsibilities as a Petty Officer, including the duty to protect sensitive, CUI marked, and OPSEC United States Navy documents and information.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

21. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts 1 and 2 of this Indictment.

22. The defendant, if so convicted, shall forfeit to the United States of America the following:

    a. All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

    b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

//
//
//
//
//
//
//
//
//
//
//

23. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

E. MARTIN ESTRADA
United States Attorney

*[signature]*

DAVID T. RYAN
Assistant United States Attorney
Chief, Terrorism and Export
Crimes Section


ANNAMARTINE SALICK
CHRISTINE M. RO
KATHRYNNE N. SEIDEN
SARAH E. GERDES
Assistant United States Attorneys
Terrorism and Export Crimes
Section

13